CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Michelle Uzeta, Esq., SBN 164402
uzetalaw@gmail.com
michelleu@potterhandy.com
710 S. Myrtle Ave., #306
Monrovia, CA 91016
Ph: (858) 375-7385

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Jorge Torres,**<br><br>  Plaintiff,<br><br>v.<br><br>**Greyhound Lines, Inc.;** and Does 1-10, Inclusive,<br><br>  Defendants. | Case No.<br><br>**Complaint for Damages and Injunctive Relief for Violations of**:<br><br>1. Title III of the American's With Disabilities Act, 42 U.S.C. §12184 *et seq.*;<br>2. California's Unruh Civil Rights Act, Cal. Civ. Code 51 *et seq.* and<br>3. California's Disabled Persons Act, Cal. Civ. Code § 54.1 *et seq.* |

1

Complaint

# INTRODUCTION

1. Plaintiff Jorge Torres (hereinafter "Plaintiff") brings this action to challenge the discriminatory policies and practices of Defendants Greyhound Lines, Inc. (hereinafter "Greyhound") and Does 1-10, Inclusive (collectively "Defendants").

2. Plaintiff alleged that Defendant discriminated against him on the basis of his disability when they refused to accommodate his disability on a bus ride to from San Bernardino, California to Escondido, California, choosing instead to remove him from the bus and deny him transportation services in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12184 *et seq.*, and related California civil rights statutes.

3. As the direct and proximate result of Defendants' discriminatory conduct, Plaintiff was caused to incur injury and inconvenience and was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, and/or accommodations.

4. Through this lawsuit, Plaintiff seeks an injunction requiring Defendants to provide him with full and equal access to its transportation services, as we as damages and reasonable attorneys' fees and costs.

# JURISDICTION & VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 for violations of the ADA.

6. Pursuant to pendant jurisdiction, attendant and related causes of action arising out of a common nucleus of operative facts are also brought under California law, including, but not limited to the Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.* and the Disabled Persons Act, Cal. Civ. Code § 54.1 *et seq.*, both of which expressly incorporate the ADA. Cal. Civ. Code §§ 51(f), 54.1(d).

Complaint

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and is founded on the following facts: Defendants operate a bus station on this District; Defendants conduct substantial business in this District; Defendants' liability arose in this District; and/or the acts and omissions upon which this action is based occurred in this District.

## PARTIES

8. Plaintiff Jorge Torres is, and at all times relevant herein was, an individual and California resident.

9. Defendant Greyhound Lines, Inc. is, and at all times relevant herein was, a private entity organized and operating as a corporation under the laws of the State of Delaware, with its primary place of business located in Cincinnati, Ohio.

10. Plaintiff is currently unaware of the true identities of Does 1-10, inclusive, and will seek leave to amend his Complaint when the true names, capacities, connections, and responsibilities of these defendants are ascertained.

11. Plaintiff is informed and believes that each of the Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, franchiser, franchisee, lessor, lessee, joint venturer, parent, subsidiary, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and was at all times acting and performing, or failing to act or perform, within the course and scope of such similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated, directed, and have

Complaint

ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

## FACTUAL ALLEGATIONS

12. Plaintiff is an individual with epilepsy. Although Plaintiff's seizures are generally controlled by medication, he does experience a range of seizure activity when under stress.

13. Plaintiff is significantly impaired in his ability to drive as the result of his epilepsy and relies on public transportation for travel.

14. Greyhound is a private corporation providing intercity bus transportation service to members of the public in cities throughout the country, including California.

15. On November 19, 2018, Plaintiff began a two-day, multi-leg trip by Greyhound from Colorado to his home in Escondido, California.

16. Before boarding the first leg of his trip at the Grand Junction Greyhound station in Colorado, Plaintiff informed the male Greyhound employee at the counter that he had epilepsy and showed his medical documentation. It is Plaintiff's personal policy to share his condition with others in the event of unanticipated seizures.

17. The Greyhound employee assured Plaintiff that he would place a note into the Greyhound computer system so that all stations on Plaintiff's route home would be aware that Plaintiff had epilepsy.

18. Plaintiff's trip included stops in Utah, Nevada and California. Before boarding the bus for each leg of his trip, Plaintiff informed Greyhound staff and security that he had epilepsy.

19. The last leg of Plaintiff's trip was from the Greyhound station located at 596 N. G Street in the City of San Bernardino, California ("San Bernardino Station") to Escondido, California on November 20, 2018.

Complaint

20. When Plaintiff arrived at the San Bernardino Station, he informed Greyhound security and staff of his medical condition.

21. Plaintiff was ticketed for bus "GLI 7005" (hereinafter "Bus").

22. The Bus was scheduled to depart the San Bernardino Station at 12:45 p.m.

23. The driver of the Bus was a woman named "Rene."

24. Plaintiff informed Rene of his medical condition.

25. Plaintiff boarded the Bus along with other passengers.

26. The seat in which Plaintiff was located had an air vent directly above it that was open, causing sunlight to hit Plaintiff directly.

27. Plaintiff feared that the light coming through the vent could trigger a seizure once the bus started moving.

28. Plaintiff looked around for another seat, but the seats were quickly filling with other passengers. Plaintiff was also comfortable with his original choice of seat.

29. Plaintiff decided to close the air vent to avoid the sunlight from hitting him directly during the trip.

30. There were no notices or signs indicating that the vents needed to remain open.

31. As Plaintiff was trying to close the air vent, the bus driver Rene yelled at Plaintiff to stop.

32. Plaintiff explained to Rene that he was closing the air vent because the sunlight was hitting him directly and it might trigger his epileptic seizures.

33. Rene yelled at Plaintiff to just move. Plaintiff explained that there were no other seats available on the bus, again explained that he was disabled, and asked Rene to not yell at him.

Complaint

34. Rene then asked Plaintiff to get off the bus and referred to him in a demeaning fashion as "love" and "sweetheart."

35. Rene led Plaintiff to the Greyhound counter and told the employees there that Plaintiff would not be riding the bus she was driving. Rene then just walked away. Plaintiff was stunned, upset, embarrassed and concerned about how he was going to get home.

36. Plaintiff was asked by a Greyhound employee named Candace Ranson ("Ranson") to complete a Customer Comment Form to document his complaints and experience.

37. Ranson told Plaintiff he could be provided an Uber ride to Escondido free of cost.

38. Plaintiff's level of upset and stress increased as he was completing the Customer Comment Form. He became emotional as he recalled the incidents involving Rene.

39. Plaintiff was also scared that he would not be able to get home safely. Plaintiff was worried because he had no extra money for a hotel or another bus fare and the next available bus going to Escondido was still scheduled to leave the following day. After completing the form, Plaintiff had an epileptic seizure and became unconscious.

40. Plaintiff woke up from the epileptic seizure inside an ambulance. He was taken to St. Bernardine Medical Center and treated for a seizure.

41. When Plaintiff was again alert and oriented, he was discharged from the hospital by Doctor Travis Henson.

42. After his discharge, Plaintiff went back to the San Bernardino Greyhound station using bus fare provided by the hospital.

43. Plaintiff arrived at the Greyhound station in San Bernardino at approximately 2:30 p.m. on November 20, 2018.

Complaint

44. Plaintiff went to the service counter and inquired about the free Uber ride that Ms. Ranson had promised him earlier in the day.

45. Greyhound staff led Plaintiff to the front entrance of the station, away from other customers. Plaintiff was then informed that Greyhound would not provide him a free Uber ride because the manager of the station viewed video footage of Plaintiff's seizure and believe he may have been drunk or on drugs.

46. Plaintiff requested to speak with the manager, to explain the situation and share medical information regarding his disability. Plaintiff was told that the manager was not available. Plaintiff was told to leave the Greyhound station.

47. Subsequently, Plaintiff saw a person who on information and belief was the manager of the Greyhound station, concealing themselves behind a nearby behind a fence/gate and listening to the conversation. Plaintiff asked the manager why he was discriminating against him. The manager would not listen to Plaintiff and had him escorted off station property by security

48. Plaintiff walked a number of blocks upset and confused. Plaintiff found a Subway restaurant with a kind employee who let him come inside and charge his phone while he waited for someone to pick him up.

49. While at Subway Plaintiff called Greyhound to file a complaint and try and obtain a refund. He was transferred to multiple departments, each of which told him he needed to talk to someone else. Plaintiff eventually got frustrated and hung up.

50. The stress of the situation caused Plaintiff to experience another seizure; an absence seizure. In a state of semi-consciousness Plaintiff walked out of the store without his belongings. When Plaintiff regained awareness he

Complaint

was approximately 3 blocks away from Subway about to cross a main roadway.

51. Plaintiff returned to Subway and remained there until approximately 9 p.m. when his ride home finally arrived.

52. In acting as herein alleged, Defendants denied Plaintiff full and equal access to the goods, services, facilities, privileges, advantages, and accommodations offered by Greyhound.

53. In acting as herein alleged, Defendants caused Plaintiff to experience difficulty, physical and emotional distress, frustration, fear, anxiety, humiliation, inconvenience, embarrassment and out-of-pocket losses.

54. In light of Plaintiff's experience, and his knowledge of Greyhound's discriminatory policies, Plaintiff has been deterred from using Greyhound's services since November 2018.

55. Plaintiff plans to travel in the future for recreation and business. Because Plaintiff does not drive, he is heavily reliant on public transportation. Plaintiff would like to use Greyhound's bus services for his future travel needs but is prevented and deterred from doing so until Defendants make their transportation services fully and equally available to, and usable by individuals with disabilities.

56. Defendants' discrimination is ongoing and continuous, and unless enjoined by this Court, will result in ongoing and irreparable injury to Plaintiff.

57. Plaintiff has no adequate remedy at law because monetary damages, which may compensate for past unlawful conduct, will not afford adequate relief for the harm caused by the continuation of the wrongful conduct of Defendants and the denial of his rights as herein alleged. Accordingly, Plaintiff is entitled to injunctive relief.

Complaint

58. An actual controversy has arisen and now exists between the parties concerning their respective rights, duties and obligations under federal and state law. Accordingly, Plaintiff is entitled to declaratory relief.

## CLAIMS FOR RELIEF
### First Cause of Action
### Title III of the Americans with Disabilities Act
### 42 U.S.C. §12184 *et seq*.

59. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs.

60. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce." 42 U.S.C. § 12184(a). See also 49 C.F.R. § 37.5(f).

61. Plaintiff is, and at all times relevant herein was, an individual with "disabilities" within the meaning of the ADA and the Department of Transportation ("DOT") regulations implementing the ADA. 42 U.S.C. § 12102; 49 C.F.R. § 37.3.

62. Defendants are private entities.

63. Defendants are primarily engaged in the business of transporting people.

64. Defendants' operations affect commerce.

65. Defendants are providers of "specified public transportation," as that term is defined by the ADA and DOT regulations. 42 U.S.C. § 12181(10). See also 49 C.F.R. § 37.3.

66. Defendants operate a "fixed route system" as that term is defined by the ADA and DOT regulations. 42 U.S.C. § 12181(4); 49 C.F.R. § 37.3.

Complaint

67. Defendants' acts and omissions as herein alleged have violated Plaintiff's rights under the ADA and its implementing DOT regulations. Defendants' discriminatory conduct includes, *inter alia*:

  a. denying Plaintiff public transportation services based on his disability (42 U.S.C. § 12184(a); 49 C.F.R. § 37.5(a));

  b. denying Plaintiff the opportunity to use transportation services intended for the general public, when he was capable of using that service (49 C.F.R. § 37.5(a));

  c. the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully enjoying the specified public transportation services provided by the entity, unless such criteria can be shown to be necessary for the provision of the services being offered (42 U.S.C. § 12184(b)(1)); and

  d. the failure to make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12184(b)(2)(A); 49 C.F.R. § 37.5(i)(2)).

68. Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. § 12188 and 42 U.S.C. § 12205, Plaintiff prays for judgment as set forth below.

Complaint

## Second Cause of Action
## Unruh Civil Rights Act
## California Civil Code § 51 *et seq.*

69. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs.

70. The Unruh Civil Rights Act ("Unruh Act") guarantees that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

71. The Unruh Act also provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

72. Plaintiff is, and at all times relevant herein was, an individual with "disabilities" within the meaning of California law. Cal. Gov't Code § 12926(m).

73. Defendants are business establishments. Accordingly, Defendants must comply with the provisions of the Unruh Act.

74. Defendants' acts and omissions as herein alleged have violated Plaintiff's rights under the Unruh Act. Defendants' discriminatory conduct includes, *inter alia*, denying, or aiding or inciting the denial of, Plaintiff's rights to full and equal use of the transportation accommodations, advantages, facilities, privileges, or services offered by Defendants to members of the public.

75. Defendants have also violated the Unruh Act by violating the ADA, as set out in Plaintiff's First Cause of Action.

76. Defendants' duties under the Unruh Act are mandatory and long-established. Defendants are deemed to have had knowledge of their duties at all times relevant herein; their failure to carry out said duties was willful and

Complaint

knowing and/or the product of deliberate indifference. Treble damages are warranted.

77. Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 52, Plaintiff prays for judgment as set forth below.

### Third Cause of Action
### California Disabled Persons Act
### California Civil Code § 54.1 *et seq.*
### (*Statutory damages and attorneys' fees only*)

78. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs.

79. The Disabled Persons Act ("CDPA") provides that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, … and privileges of all common carriers … motor vehicles, … motorbuses, streetcars, … or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided), …" Cal. Civ. Code § 54.1(a).

80. A violation of the ADA is also a violation of the CDPA. See Cal. Civ. Code, § 54.1(d).

81. Defendants, a private entity providing transportation services, must comply with the CDPA.

82. Defendants' acts and omissions, described herein, denied Plaintiff full and equal access to Defendants' transportation services and therefore, violate the rights of Plaintiff under the CDPA.

83. Defendants have also violated the CDPA by violating Title III of the ADA, as set out in Plaintiff's First Cause of Action.

Complaint

84. Defendants' duties under the CDPA are mandatory and long-established. Defendants are deemed to have had knowledge of their duties at all times relevant herein; their failure to carry out said duties was willful and knowing and/or the product of deliberate indifference. Treble damages are warranted.

85. Pursuant to Cal. Civ. Code § 54.3(a), Plaintiff prays for statutory damages and attorneys' fees.

## PRAYER

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Issue an injunction pursuant to the ADA and Unruh Civil Rights Act ordering Defendants to:
   a. Adopt non-discrimination policies;
   b. Conduct disability sensitivity training of all public-facing staff and also train them on the policy adopted pursuant to "a" above;
   c. Take other steps as necessary to ensure Plaintiff is provided full and equal access to the transportation services offered by Defendants as required by law.

   *[Note: As noted in the Third Cause of Action, Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act.]*

2. Award Plaintiff general, compensatory, statutory and treble damages according to proof and in an amount within the jurisdiction of this court;

3. Award Plaintiff attorneys' fees, litigation expenses, and costs of suit, as provided by law; and

Complaint

4. Award such other and further relief as the Court may deem just and proper.

Dated: April 19, 2019

By: /s/ Michelle Uzeta
Michelle Uzeta, Esq.
Attorneys for Plaintiff

Complaint